IN RE ESTATE OF ORA A. CHANEY, DECEASED.
DOUGLAS CHANEY ET AL., APPELLANTS, v. LYLE J. KOENIG,
PERSONAL REPRESENTATIVE OF THE ESTATE OF ORA A. CHANEY,
DECEASED, APPELLEE.
439 N.W.2d 764

Filed May 12, 1989.   No. 87-561.

Terry R. Wittler and Shawn D. Renner, of Cline, Williams, Wright, Johnson & Oldfather, for appellants.

No appearance for appellee.

John H. Bernstein, Terry L. Fredricks, and Steven J. Kahler, of Dixon & Dixon, P.C., and David A. Beck for creditor Federal Deposit Insurance Corporation.

Daniel E. Bryan, of Heinisch & Bryan Law Office, for creditor Geneva State Bank.

BOSLAUGH, SHANAHAN, and GRANT, JJ., and KNAPP and ROWLANDS, D. JJ.

GRANT, J.

This is an appeal from the district court for Fillmore County. Petitioners-appellants Douglas Chaney and Michael Chaney are the two beneficiaries of the Ruth Chaney James testamentary trust. Petitioner-appellant Daniel R. Stogsdill is the successor trustee of the trust. He succeeded to the office of trustee after the death of Ora A. Chaney, who had been named trustee in James' will. A "Stipulation and Joint Motion" was executed by Stogsdill, as representative of Douglas and Michael Chaney, and Lyle J. Koenig, as personal representative of the Ora Chaney estate, and filed in the estate case of Ora Chaney, case No. 7448, in the county court for Fillmore County. In that document, among other motions made and facts stipulated to, the beneficiaries moved that Stogsdill be named successor trustee. Apparently, the county court made that requested appointment. On July 30, 1986, appellants filed a second amended petition in the Fillmore County Court, also in case No. 7448, seeking to recover trust funds held by the decedent, Ora Chaney, the original trustee, on a "swollen assets" theory.

After a hearing on October 14, 1986, the county court ordered Koenig, as personal representative of the Ora Chaney estate, to deliver to Stogsdill, the successor trustee, "all identifiable trust property currently in his [Koenig's] possession" and "other such trust property which he may later have in his possession or which becomes strictly identifiable." The county court found that, as of October 14, 1986, such identifiable trust property consisted exclusively of three debentures and sustained a "Motion to Dismiss against the Petitioners' causes of action for wrongful commingling of trust assets and improper administration of trust assets filed as set out in their second amended petition . . . ."

The beneficiaries and successor trustee appealed, and, after a hearing, the district court affirmed the decision of the county court. Appellants timely appealed to this court, assigning as error the actions of the district court (1) in affirming the decision of the county court, which dismissed the second

amended petition, and (2) in failing to reverse the county court's order on the ground that the county judge considered matters outside the record in reaching his decision. The general allegation of error in the first assignment does not specify the errors in the decision made by the county court, which was affirmed by the district court. We remand for further proceedings.

The record shows the following. James, the great-aunt of the two beneficiaries, died testate on July 2, 1976. Her will established a testamentary trust and named her brother, Ora Chaney, as trustee. The trust provided for the benefit of the beneficiaries, who were to receive their distributive shares when reaching age 35. Douglas Chaney was 30 years old and Michael Chaney was 35 years old in 1986, when the stipulation above-referred-to was filed.

On March 23, 1978, Ora Chaney executed an "Acceptance of Trusteeship," which was filed in the Fillmore County Court in case No. 6692, apparently entitled "In the Matter of the Testamentary Trust Created by the Last Will and Testament of Ruth Chaney James, Deceased." In this document, Ora Chaney accepted the duties of trustee, agreed to accept the provisions of the trust as set forth in the last will and testament of James, and "[submitted] personally to the jurisdiction of [the county court] in any proceeding pursuant to Nebraska probate Code Section 30-2806 in any matter relating to the trust."

On the same day, Ora Chaney executed a "Receipt," which was filed in "In the Matter of the Estate of Ruth Chaney James, Deceased." This receipt showed the following:

Received of Helen H. Cellar, Executrix of the Estate of Ruth Chaney James, Deceased, the following described property:

| | |
|---|---|
| Balance of cash on hand | $ 3,212.55 |
| Savings Account, Geneva, State Bank, Geneva, Nebraska #3995 Balance on date of death $22,262.92 - balance on March 22, 1978 | $24,315.69 |
| Note dated May 14, 1975 to Ruth James from Ora Chaney in the sum of $10,000.00 due May 14, 1976 with 8$1/2$% interest no endorsement of interest paid | $10,000.00 |

Household Finance Corporation 9%
Debenture, Series 3F, due July 1, 2000 dated
Febr. 1, 1976 interest paid semi-annually
January 1 and July 1               $ 5,000.00
   Bank America Realty Investors $6^3/4\%$
Convertible Subordinate Debenture due 1990
dated August 24, 1970 Interest paid
semi-annually January 15 and July 15      $ 1,500.00
   American Telephone & Telegraph Company
Thirty year $8^3/4\%$ Debenture due May 15,
2000 dated May 18, 1970 #8010-7281 Interest
paid semi-annually May 15 and November 15   $   400.00

Pursuant to the standards set forth in Neb. Rev. Stat. § 30-2806(4)(b) (Reissue 1985), Ora Chaney posted no bond, and the administration of the trust proceeded "expeditiously . . . free of judicial intervention and without order, approval or other action of any court . . . ." Ora Chaney filed no reports during the 6 years he served as trustee. The record contains no further filings concerning case No. 6692, but it appears from some evidence and many remarks of counsel during the October 14 hearing that on April 4, 1978, Ora obtained three money orders totaling $27,500. The receipts for the money orders indicated that $23,500 was transferred to Richard Chaney (Ora Chaney's son and the beneficiaries' father), and $2,000 was given to each of the beneficiaries. Such actions, of course, completely violated the terms of the trust Ora Chaney had accepted 12 days before.

Statements of counsel in the record indicate that in return for the funds he received, Richard Chaney executed and delivered a mortgage granting Ora Chaney, as trustee, a second lien on certain real estate. Douglas and Michael Chaney testified during a July 1986 hearing that they each received an additional amount of $1,258 from Ora between 1978 and 1983. This amount apparently represents interest on the three debentures.

Ora Chaney died testate on March 20, 1984, and appellee, Koenig, was appointed personal representative of his estate in November of 1984. Pursuant to his duties as personal representative, Koenig caused a "Notice to Creditors" to be

published. According to a brief filed on behalf of appellee, the March 14, 1985, notice stated that the last day for filing claims against the Ora Chaney estate was May 16, 1985.

On May 1, 1985, Michael Chaney filed an undetailed general claim against the estate in the amount of $43,188.89. This claim was uncontested. Douglas Chaney filed a general claim against the estate on August 2, 1985, in the amount of $20,000. Koenig objected to this claim as untimely. The county court expressly declined to rule on the merits of these claims during the hearings in this matter, but Stogsdill informed the county court that the general claims had "really merged into this Petition."

Although the original filing date does not appear in the record, briefs filed on behalf of the appellee indicate that this action began on March 14, 1986. On July 21, 1986, the county court held a hearing on the beneficiaries' first amended petition. At this hearing, the county court asserted exclusive jurisdiction over the matter. The "Stipulation and Joint Motion" executed by Koenig, as personal representative, and Stogsdill, on behalf of the beneficiaries, was received in evidence.

The stipulation stated that the trust had been established; that Ora Chaney had administered the trust; that as a result of Ora Chaney's administration, at the time of the stipulation the trust res consisted exclusively of the noncash trust property and the interests of the beneficiaries in the Ora Chaney estate; that the beneficiaries sustained a loss as a result of Ora Chaney's administration of the trust; that the noncash trust property was in the possession of Koenig; and that the Ora Chaney estate was insolvent.

The stipulation further provided that the trust res as of March 23, 1978, included $27,528.24 in liquid assets, the $10,000 note, and the three debentures; that the liquid assets received by Ora Chaney on March 23, 1978, together with any appreciation thereon, were part of the trust res; that the trustee did not collect the $10,000 note; and that as of March 31, 1986, the total amount of principal and accrued interest on the note was $24,291.44 and was part of the trust res. The parties also stipulated that the value of the appreciated liquid assets would range from $60,968 to $155,302, depending on which of three

alternative investment portfolios was used to calculate interest.

The "Stipulation and Joint Motion" concluded as follows:

WHEREFORE, the parties named herein jointly move, and request:

(a) That the Court determine the precise value of the trust res based upon a reasonable rate of return consistent with the trustees [sic] duty of prudence, these stipulations and agreements, and after consideration of the comparison returns on trust investments contained herein;

(b) That the Court determine the applicability and priority of the trust res value against the Estate of Ora A. Chaney consistent with the stipulations and agreements contained herein;

(c) That the Court conduct a hearing to determine the foregoing;

(d) That the Court name Daniel R. Stogsdill of Cline, Williams, Wright, Johnson & Oldfather as successor trustee of the trust;

(e) That upon the completion of said hearing, the Court order the personal representative to transfer to the successor trustee the property and money described heretofore and order the successor trustee to manage and distribute these assets consistent with the terms of the testamentary trust of Ruth Chaney James less any amounts which the Court may determine are properly owed the estate by Michael Chaney or Douglas Chaney, respectively; and

(f) That the Court order such other and further relief as the court deems just and equitable in the premises.

After the hearing of July 21, 1986, the county court, among other orders, appointed Stogsdill as successor trustee of the James testamentary trust. We thus encounter the first of the procedural problems that infest this entire proceeding. The Ruth Chaney James testamentary trust, case No. 6692, and the Ora A. Chaney estate, case No. 7448, are two entirely separate cases. A successor trustee should be appointed in the trust case, and that trustee could then bring whatever action is necessary in the estate proceedings. That procedural flaw does not control

the disposition of the cause before us.

The county court judge noted that Koenig was the only interested party who had received notice of the July 21 hearing. After hearing argument and the testimony of Douglas Chaney, Michael Chaney, and Koenig, the judge stated that he "would really like to have another Hearing with at least the major creditors" present.

The county court's order of July 30, 1986, directed that Koenig deliver to Stogsdill, as successor trustee, "all identifiable trust property currently in his possession and . . . other such trust property which he may later have in his possession or which becomes strictly identifiable," that is, the three debentures. The court further ordered that a hearing be conducted on August 12, 1986, and that Stogsdill provide notice of the hearing to creditors of the estate. The order, drafted by counsel for the beneficiaries, reflects the beneficiaries' objection to a second hearing, but no objection was actually made during the July 21 proceedings.

A second amended petition was filed on July 30, 1986, adding the successor trustee as a named petitioner and alleging, in part, that Ora Chaney had taken possession of the trust assets and that

> 6. Ora A. Chaney died testate on March 20, 1984. Prior to his death, Ora A. Chaney had wrongfully commingled and improperly administered the property he received as Trustee from Ruth Chaney James, thus increasing his estate.
>
> . . . .
>
> 8. As a result of Ora A. Chaney's wrongful act of commingling Trust property with his own and improperly administering the Trust property, thus increasing his estate, the entire Estate of Ora A. Chaney is charged with the Trust created in the Will of Ruth Chaney James to the extent of the value of the Trust interest, including all income, appreciation and growth therefrom.

The petitioners-appellants prayed that the court (1) enjoin Koenig from making any distributions from the estate until the interests of the beneficiaries were finally determined, (2) issue an order charging the entire estate with the trust created by

James, (3) conduct a hearing to determine the extent of the petitioners' interests in the estate, and (4) order Koenig to transfer to the successor trustee the trust assets receipted by Ora Chaney on March 23, 1978, plus "[a]ll other property or money determined by the court to constitute Trust property and thus not includable in the Estate of Ora A. Chaney."

The August 12 hearing was apparently continued many times. The October 14, 1986, hearing on the second amended petition was attended by the beneficiaries' counsel; Stogsdill, as successor trustee in the James testamentary trust; Koenig, as personal representative of the Ora Chaney estate; Richard Chaney's counsel; and counsel for the Geneva State Bank and the Federal Deposit Insurance Corporation (creditors), the major creditors of the Ora Chaney estate. At this time, the appellants orally objected to the second hearing because the matter was "purely a matter between the Estate and the Trust and its beneficiaries," because the actions of the personal representative at the July 21 hearing were binding on the creditors, and because the creditors were not the real parties in interest. The court stated that the October hearing was a continuation of the July hearing, and the objection was apparently overruled.

The creditors objected to the earlier July 21 hearing, and contended they had not received notice of and should not be bound by the stipulation executed by Koenig. The creditors objected to the October 14 hearing because they had not received copies of the second amended petition, which the appellants contended was to be the subject of the hearing. Eventually, apparently, the creditors waived whatever rights they had to have copies of the petition, and the October 14 hearing proceeded.

Koenig was the only person who testified as a witness during the October 14 hearing. He testified that his investigation of the trust assets consisted of going through bank boxes and that in doing so he found the three debentures and receipts for three money orders dated April 4, 1978, indicating that $23,500 had been transferred to Richard Chaney and $2,000 to each of the beneficiaries. Koenig did not discover a segregated amount of $3,212.55 or a trust savings account at the Geneva State Bank.

Nor did Koenig find the $10,000 note or any evidence that Ora Chaney had paid the note.

Koenig further testified that he had no personal knowledge of several matters set forth in the stipulation and that he had signed the stipulation as an effort to "get the facts before the Court" so that the court could give him directions and instructions regarding this action. He stated that, in signing the stipulation, it was not his intention to bind the estate and that he did not take any position as to whether the beneficiaries were entitled to priority funds from the estate.

The county court received documents evidencing the beneficiaries' general claims against the estate, but did not rule on those claims, and sustained the creditors' objection to the stipulation.

The creditors then moved to dismiss the beneficiaries' causes of action based on commingling and improper administration of trust assets (1) because these were tort claims against the estate which had not been timely filed and were, therefore, barred by Neb. Rev. Stat. § 30-2485 (Reissue 1985), and (2) because the beneficiaries failed to state a prima facie case of commingling or improper administration of trust funds.

Noting that petition paragraph 6 alleged that Ora Chaney wrongfully commingled and improperly administered the trust property, the county judge commented, "I don't think anybody that knew Mr. Chaney, would infer the fact that he wrongfully took the assets and put them in his own Estate. I don't know as though he enhanced his Estate during the period when this Estate was going down." The judge "reaffirmed" his ruling on the first petition, but stated that the beneficiaries were entitled to the $10,000 note if they could find it.

The county court's order of October 17, 1986, directed Koenig to deliver to Stogsdill "all identifiable trust property currently in his possession and [to] deliver other such trust property which he may later have in his possession or which becomes strictly identifiable." As of October 17, the identifiable trust property was only the three debentures.

The October 17 order further stated: "2. The Court sustains the Motion to Dismiss against the Petitioners' causes of action for wrongful commingling of trust assets and improper

administration of trust assets filed as set out in their second amended petition and dismisses their action."

On appeal, the district court received into evidence, without objection, the county court transcript and bill of exceptions as to both the July 21 and October 14 hearings. No other evidence was presented to the district court. In affirming the decision of the county court, the district judge concluded:

> There is evidence that the cash and savings account delivered to the trustee was distributed to the beneficiaries and their father. The evidence is that the beneficiaries were adults from the beginning of the trust. There is evidence that the income from the debentures was distributed to the beneficiaries. The [personal representative] found no note with the debentures. No one seems to have made a search of any bank records. The beneficiaries seem to indicate that they do not know anything about all these matters but the county court judge is not required to believe their testimony. The trustee was the grandfather of the beneficiaries. While this Court believes in the theory or doctrine of swollen assets, these facts do not provide a basis for its application.

We review this case, as did the district court, for error appearing on the record. *In re Estate of Miller,* 231 Neb. 723, 437 N.W.2d 793 (1989); *In re Estate of Reimer,* 229 Neb. 406, 427 N.W.2d 293 (1988).

Neb. Rev. Stat. § 24-517(1) (Cum. Supp. 1986) provides that each county court shall have "[e]xclusive original jurisdiction of all matters relating to decedents' estates, including the probate of wills and the construction thereof." Neb. Rev. Stat. § 30-2210 (Reissue 1985) states that, except as otherwise provided, the Nebraska Probate Code, Neb. Rev. Stat. §§ 30-2201 to 30-2902 (Reissue 1985 & Cum. Supp. 1986), applies to "(1) the affairs and estates of decedents . . . and (5) trusts subject to administration in this state." Section 30-2211 (Reissue 1985) further provides that, to the full extent permitted by the Constitution of Nebraska, the county court has jurisdiction over all subject matter relating to "(1) estates of decedents . . . and (3) trusts." Appellants chose to file this matter in the county court, and we determine that the action

was properly filed in the county court and must conform with the provisions of the Nebraska Probate Code.

The nonclaim statute, § 30-2485, provides:

(a) All claims against a decedent's estate which arose before the death of the decedent . . . whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, if not barred earlier by other statute of limitations, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:

(1) within two months after the date of the first publication of notice to creditors if notice is given in compliance with section 30-2483; *Provided . . . .*

Section 30-2209(4) (Reissue 1985) provides:

Claims, in respect to estates of decedents . . . includes liabilities of the decedent or protected person whether arising in contract, in tort or otherwise, and liabilities of the estate which arise at or after the death of the decedent or after the appointment of a conservator, including funeral expenses and expenses of administration. The term does not include estate or inheritance taxes, demands or disputes regarding title of a decedent or protected person to specific assets alleged to be included in the estate.

The record shows that Koenig, as personal representative, is the only proper appellee in this case. Koenig did not file a brief with this court; however, counsel for the Geneva State Bank and the Federal Deposit Insurance Corporation filed briefs in this appeal presenting issues contended by the creditors and, we presume, by Koenig.

The briefs filed on behalf of appellee claim that, to the extent appellants' second amended petition states causes of action based on commingling or misappropriation of trust funds, those causes of action are tort claims which were not timely presented and are, consequently, barred under § 30-2485. Appellants contend this action is a dispute regarding the title of the decedent, Ora Chaney, to "specific assets alleged to be included in the estate" and need not be filed as a claim against

the estate.

There are two types of remedies available to a beneficiary who seeks to recover trust property from a trustee. This case is further complicated by the fact that the trustee is deceased. Generally speaking, the beneficiary may elect to either (1) establish liability for breach of trust and obtain a judgment against the individual trustee or (2) recover the trust property or its product. Through their second amended petition, the beneficiaries elected the latter remedy of tracing, seeking to recover identifiable trust assets or the product of trust property.

In *In re Estate of Severns*, 217 Neb. 803, 352 N.W.2d 865 (1984), we held that the county court had jurisdiction to determine whether certain property belonged to a decedent's estate and that such an action was not a claim under § 30-2209(4). "It is clear beyond question that the action here involved a dispute regarding title of property allegedly belonging to the decedent and included in her estate, and was not a claim. The county court, however, did have jurisdiction to determine whether the property properly belonged to the estate." *Severns, supra* at 805, 352 N.W.2d at 868. Similarly, we hold that this action to recover specific trust property, or its traceable product, from a decedent's estate is not a claim under § 30-2209(4) and need not be filed as a claim against the estate. Therefore, this action was not barred by the nonclaim statute, § 30-2485.

This type of action, however, is an adversary proceeding to which the rules of civil procedure apply. See Neb. Rev. Stat. § 24-528 (Reissue 1985). Due to numerous procedural irregularities in the county court and the actions of the county judge who tried this matter, we determine that appellants did not receive a full, fair hearing on all the issues they have presented. We determine there is no dispute as to part of the trust assets recovered by appellants. We therefore affirm in part and remand for further proceedings as to part of appellants' contentions.

The irregularities began with the motion of the petitioners-appellants to have Stogsdill appointed as a successor trustee in the James testamentary trust, apparently case No. 6692, by a pleading filed in the Ora Chaney estate case.

No prejudice resulted, however, and we consider Stogsdill as the successor trustee.

Next, no notice of the July 21 hearing was given to the creditors of the Ora Chaney estate. This is a proceeding under § 30-2405 (Reissue 1985), which provides:

> Persons interested in decedents' estates . . . may petition the court for orders in formal proceedings within the court's jurisdiction . . . . The court has jurisdiction of all proceedings to determine how decedents' estates subject to the laws of this state are to be administered, expended and distributed.

Section 30-2406 (Reissue 1985), further, provides:

> In proceedings within the jurisdiction of the court where notice is required by this code or by rule, interested persons may be bound by the orders of the court in respect to property in or subject to the laws of this state by notice in conformity with section 30-2220. An order is binding as to all who are given notice of the proceeding though less than all interested persons are notified.

In this case, the successor trustee, while he is seeking relief against his predecessor trustee and is trying to establish the wrongs committed by that trustee, cannot bring an action under § 30-2806, but, instead, since the predecessor trustee is dead, must turn to the estate of that trustee. It is in the estate proceeding that the successor trustee must establish how, and to what extent, the deceased trustee has wronged the beneficiaries. In so acting, the successor trustee is faced with many procedural problems. Whether the successor trustee is seeking relief by filing a claim against the decedent's estate or in a proceeding outside the claim procedure (such as generally described in *Severns, supra*), he must give notice as required by § 30-2220 (Reissue 1985) to interested persons.

"Interested person" is defined in § 30-2209(21) to include "heirs, devisees, children, spouses, creditors, beneficiaries and any others having a property right in or claim against a trust estate or the estate of a decedent . . . which may be affected by the proceeding."

Section 30-2220(a) provides:

> If notice of a hearing on any petition is required and

except for specific notice requirements as otherwise provided, the petitioner shall cause notice of the time and place of hearing of any petition to be given to any interested person or his attorney if he has appeared by attorney or requested that notice be sent to his attorney.

Finally, § 30-2222 (Reissue 1985) provides:

In formal proceedings involving trusts or estates of decedents . . . the following apply:

. . . .

(2) Persons are bound by orders binding others in the following cases:

. . . .

(ii) To the extent there is no conflict of interest between them or among persons represented . . . orders binding a personal representative bind persons interested in the undistributed assets of a decedent's estate in actions or proceedings by or against the estate. . . .

. . . .

(3) Notice is required as follows:

(i) Notice as prescribed by section 30-2220 shall be given to every interested person or to one who can bind an interested person as described . . . above.

Under § 30-2222(2)(ii), Koenig, as personal representative, had the authority to bind the creditors with respect to the undistributed assets of the Ora Chaney estate, but only to the extent there was no conflict of interest between Koenig and the creditors. We note that Koenig filed no responsive pleadings in this action, but instead executed a stipulation and joint motion. Some of the terms of that document were clearly incompatible with the interests of the creditors. In light of these circumstances, the July hearing was a nullity, and the county court's order of July 30, 1986, properly directed Stogsdill to provide notice of hearing to creditors of the estate.

The mere presence of counsel for the creditors at the October hearing, however, did not make the creditors parties to the lawsuit. This problem is significant because the motion to dismiss the second amended petition for failure to prove a prima facie case was made by the creditors. Such a motion must be made by a party.

It might be consistent with Koenig's position in this matter (that he did not take any position as to whether the beneficiaries were entitled to priority funds from the estate) for him to attempt to interplead the creditors, pursuant to Neb. Rev. Stat. § 25-325 (Reissue 1985), to the extent the beneficiaries seek "the recovery of personal property" and the creditors, without collusion with Koenig, "[have] or [make] a claim to the subject of the action." Koenig did not pursue this avenue.

Neb. Rev. Stat. § 25-323 (Reissue 1985) provides:

> The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in.

The county court did not so order.

The creditors also might attempt to intervene in the action. Neb. Rev. Stat. § 25-328 (Reissue 1985) provides:

> Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the State of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences.

The record contains no petition in intervention. See Neb. Rev. Stat. § 25-330 (Reissue 1985).

Similarly, the record gives no indication that Richard Chaney had standing to participate as a party to the October 14 proceedings, but his attorney fully participated in those proceedings.

A motion to dismiss for failure to prove a prima facie case should be treated as a motion for directed verdict, which must be made by a party to the action. The county court erred in entertaining the creditors' motion to dismiss, without some

form of contested proceeding which this court can review.

The overall thrust of what we are trying to set out in this case is that there are many problems arising within an estate proceeding which cannot be disposed of by the granting or disallowing of claims. When such matters are present within an estate proceeding, the Nebraska Probate Code states that petitions seeking formal orders of the court may be filed. We are unable to find in the code any procedural rules regarding the determination of such petitions, nor are we directed to any code provisions. In such a situation, we turn to § 24-528, which provides:

> All provisions in the codes of criminal and civil procedure governing actions and proceedings in the district court not in conflict with statutes specifically governing procedure in county courts and related to matters for which no specific provisions have been made for county courts shall govern and apply to all actions and proceedings in the county court.

Before an order may be entered pursuant to a petition, it would appear that adverse parties should be notified. The county court could then determine if the persons notified want to enter the case and, if so, if they should be permitted to appear in the case. The court could then require pleadings to be filed in response to the petition and then have a hearing on the issues, which could be presented to the court by parties interested in a certain result. In other words, an ordinary adversarial trial could be conducted on the issues before the court.

We determine that during an estate proceeding, where the probate court is petitioned to settle "demands or disputes regarding title of a decedent . . . to specific assets alleged to be included in the estate," as provided in § 30-2209(4), the probate court shall determine the relief sought only after providing notice and appropriate due process to other persons claiming, or having an interest in, such assets.

Such a procedure is far removed from the procedures followed in this case, and the difference is predicated on notice and some formal procedure. It must be remembered that the advent of the Nebraska Probate Code, as much as that code sought to speed up procedures, did not result in the abrogation

of the due process clauses of the U.S. and Nebraska Constitutions. An approach without notice may result in an approach adopted by appellants, as set out in their brief at 24:

> To the extent that the creditors feel that Mr. Koenig erred in executing the stipulation and joint motion, their remedy lies in bringing an action against Mr. Koenig for breach of his statutory duties rather than attempting to impeach the stipulation, which Mr. Koenig clearly had the power to make.

It would appear that appellants contend for the position that all interested persons could have ex parte hearings based on whatever agreement the parties could reach with the personal representative. Then, if the personal representative makes any mistake, parties who were damaged could sue the personal representative. Such procedure cannot be for the good of those governed by the probate code.

Because this cause is to be remanded, we also will discuss appellants' contention that they should be able to recover commingled or misappropriated trust property from the Ora Chaney estate on a "swollen assets" theory.

In general, a beneficiary seeking to trace trust funds must prove that the property sought either is part or all of the original trust property, or has been produced by the original trust res through sale, exchange, reinvestment, receipt of income or profits, or some other process. See G. Bogert & G. Bogert, The Law of Trusts and Trustees § 921 (rev. 2d ed. 1982), citing *Central Nat. Bank v. First Nat. Bank*, 117 Neb. 161, 219 N.W. 894 (1928).

> The generally adopted view denies the remedy of tracing where the proof of the beneficiary-claimant merely shows the receipt of trust property by the defendant and makes no case as to its subsequent history or its existence among the present assets of the defendant, and also where the evidence shows that the trust property has been disposed of in such a way as to leave no product.

G. Bogert & G. Bogert, *supra* at 367-69, citing *State, ex rel. Sorensen, v. Nebraska State Savings Bank*, 127 Neb. 832, 257 N.W. 64 (1934). The basis of this rule is that the beneficiary's right to a priority distribution is based on ownership of some

specific fund or assets, or on a claim or charge upon all the fund or assets, because the trust property is contained in or has contributed to them. See *City of Lincoln v. Morrison,* 64 Neb. 822, 90 N.W. 905 (1902). However, if the trustee destroys a trust fund by dissipating it altogether, without ever placing the fund in the trustee's personal funds, there remains nothing to be the subject of a trust, and the beneficiary has no specific claim against any property or fund, but is merely a creditor of the trustee. *Id.*

The "swollen assets" doctrine operates as an exception to the strict identification rule. For example, when a trustee has paid his own creditors with trust funds, there should not be a tracing because the transaction does not produce any property or product to be traced. The swollen assets doctrine, however, allows a beneficiary to trace into the estate of an insolvent trustee on the theory that the use of trust funds to pay the personal debts of the trustee relieved him from using his individual property for that purpose and consequently increased the amount of it on hand at insolvency. Thus, it could be said that using trust funds to pay personal debts had increased the assets on hand at the time of determining the rights of creditors and other claimants to the trustee's estate. See, generally, *City of Lincoln v. Morrison, supra*; G. Bogert & G. Bogert, *supra*, § 922.

While this court has on occasion employed the swollen assets doctrine, see *State, ex rel. Sorensen, v. Farmers State Bank*, 121 Neb. 532, 237 N.W. 857 (1931), we decline to do so in matters implicating the portion of Nebraska Probate Code, § 30-2209(4), which provides that the term "claim" does not include a dispute regarding title of a decedent to specific assets alleged to be included in the estate. A swollen assets theory of recovery, by its very nature, does not implicate "specific assets." A beneficiary seeking to recover trust property, or its product, from a decedent's estate must trace the trust property to a specific fund or asset which is included in the estate. In other words, to obtain a preference, appellants must show that the Ora Chaney estate actually was increased by the misappropriation or commingling of their trust property. They are entitled to a preference to the extent of such increase only.

See *City of Lincoln v. Morrison, supra.*

The record indicates that the three debentures constituting original trust assets were properly traced, and the county court correctly ordered Koenig to deliver the debentures to the successor trustee. Appellants are entitled to interest paid on the debentures, less amounts already received, provided they trace the interest transactions in a manner consistent with that outlined in *City of Lincoln v. Morrison, supra.*

Similarly, appellants are entitled to the $10,000 note, if it can be found, or to attempt to prove the proceeds of the note can be identified in Ora Chaney's estate.

Although the record is inconclusive on this point, it does not appear at this stage of the litigation that the Ora Chaney estate was increased by Ora Chaney's disposition of the liquid assets of the trust. Koenig's testimony was that he did not discover a segregated amount of $3,212.55 or a savings account at the Geneva State Bank. To the contrary, the record suggests that on April 4, 1978, Ora Chaney disposed of the liquid assets by distributing $2,000 to Michael Chaney, $2,000 to Douglas Chaney, and $23,500 to their father, Richard Chaney, in return for a second mortgage on real estate. Richard Chaney was not called on to testify in the October hearing. In the sketchy record before us, it would appear that the assets which Ora Chaney received as trustee were not channeled into his personal bank account, but were immediately given to others. If that turns out to be the fact, such action was wrongful, but did not increase Ora Chaney's estate.

Nonetheless, appellants are entitled to a chance to prove their theory that the James trust assets can be traced into the Ora Chaney estate. The record is replete with remarks by the county judge which reflect his personal knowledge of the affairs of the decedent, the beneficiaries, James, and other members of the Chaney family. The judge's comments, "I don't think anybody that knew Mr. Chaney, would infer the fact that he wrongfully took the assets and put them in his own Estate," and "I don't know as though he enhanced his Estate during the period when this Estate was going down," were improper and demonstrate that appellants did not receive an impartial hearing on the second amended petition. Such remarks also indicate that the

county judge's rulings were based on factual information possessed by the judge. We stated in *Cline v. Franklin Pork, Inc.*, 210 Neb. 238, 244, 313 N.W.2d 667, 671 (1981), "The functions of a judge and a witness are incompatible and it is utterly impossible for one to exercise the rights of a witness and to perform the duties of a judge at one and the same time." See, also, *Franks v. Franks*, 181 Neb. 710, 150 N.W.2d 252 (1967).

To the extent they order the personal representative of the Ora Chaney estate to deliver the named debentures, which are specific identifiable trust assets of the James trust, to the successor trustee, the decisions below are affirmed, since the creditors were present at the October 14, 1986, hearing and neither they nor the appellee complained in that hearing, or on this appeal, as to that part of the county court's order. The action must be remanded for a proper hearing to determine whether the other assets of the trust can be traced to property currently in the possession of the personal representative of the estate. Each party shall pay the costs incurred herein by such party.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.